IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CORA LEE PITTS                                                                                           PLAINTIFF

v.                              Civil No. 5:22-cv-05010-TLB-MEF

SHERIFF TIM HELDER,
Washington County, Arkansas                                                                        DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Cora L. Pitts ("Pitts"), filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Pitts is currently incarcerated at the McPherson Unit of the Arkansas Division of Correction. In November 2021, while she was incarcerated in the Washington County Detention Center ("WCDC"), Pitts maintains she was subjected to unconstitutional conditions of confinement when she was placed in an isolation cell for three days. Pitts has sued Sheriff Helder in his official capacity only. (ECF No. 8 at 6).

Pending before the Court is Sheriff Helder's Motion for Summary Judgment. (ECF No. 24). Pitts has responded. (ECF No. 32).[1] The Motion is ready for decision. The Honorable Timothy L. Brooks, United States District Judge, referred the case to the undersigned in accordance with 28 U.S.C. § 636(b)(1) and (3) for the purpose of making a Report and Recommendation on the pending Summary Judgment Motion.

### I.   BACKGROUND

Pitts was arrested on October 21, 2021, on a charge of public intoxication. (ECF No. 26-2 at 1; ECF No. 26-7 at 31). When she was being booked into the WCDC, she was purportedly

---

[1] In her Response, Pitts indicates she mailed a summary judgment response to the Court in October. However, the only document received by the Court from Plaintiff in October was her change of address notice (ECF No. 29) filed on October 5, 2022.

involved in an altercation with two deputies which led to her being charged with assault on a correctional officer. (ECF No. 26-7 at 31-32). Pitts cannot recall the altercation and believes she blacked out when the altercation is said to have occurred. *Id.*

On October 27, 2021, Pitts requested that her medical and pharmacy records be obtained. (ECF No. 26-4 at 6). She indicated she had PTSD, generalized anxiety, ADHD, OCD, and agoraphobia.[2] *Id.* She further said she was an alcohol and drug addict, had borderline personality disorder, and was "NARCOEPTIC PHYSIO." *Id.* Prior to her incarceration, Pitts had not been taking any medication for her disorders and was instead self-medicating with alcohol. (ECF No. 26-7 at 29). Social Worker Sheila Bryant ("SW Bryant") asked Pitts if she wanted to take the medication, Zyprexa and Prozac, she was on the last time she was detained. (ECF No. 26-4 at 6). Pitts declined. *Id.* SW Bryant encouraged Pitts to get back on medication. *Id.* Pitts again declined. *Id.*

On October 28, 2021, Pitts complained that she was suffering from major anxiety and was hearing voices. (ECF No. 26-3 at 7). She asked to be placed "downstairs" for a few days. *Id.* When asked what she meant by "downstairs," Pitts responded that she meant like "h-pod" but indicated she was "a bit" better "now." (ECF No. 26-3 at 9). During her deposition, Pitts clarified that she meant she should be placed in segregation which she described as being a small pod. (ECF No. 26-7 at 34).

On October 29, 2021, Pitts submitted a medical request asking for her "rhesperodoine" medication. (ECF No. 26-4 at 4). It was noted Pitts had been in the WCDC several times and was known to have mental illness. *Id.* Her request was granted and a prescription for risperidone

---

[2] Post Traumatic Stress Disorder (PTSD). Attention-Deficit/Hyperactivity Disorder (ADHD). Obsessive-Compulsive Disorder (OCD).

2

written.  *Id.*  Records indicate Pitts refused to take risperidone on the evening of November 2, 4-7, and 9, 2021.[3]  *Id.* at 16.

On November 2, 2021, it was noted that Pitts had reported a history of PTSD, OCD, generalized anxiety, and that her records indicated a history of schizophrenia and acting out behaviors.  (ECF No. 26-4 at 3).  That same day, Pitts asked that she receive her medication in the evenings only.  (ECF No. 26-3 at 10).  She indicated the morning pills were making her groggy.  *Id.*  Her request was approved.  (ECF No. 26-4 at 3).

On November 6, 2021, an incident report reflects that Pitts was observed at 12:25 p.m. covering her face in butter and throwing her drink on her face.  (ECF No. 26-5 at 2).  It was noted that Pitts' behavior continued to worsen.  *Id.*  Pitts began "talking to people who were not there and was visibly upset and crying."  *Id.*  It was believed Pitts was suffering "some type of mental breakdown."  *Id.*  The decision was made to move Pitts out of Z-Block and into G-Block, cell 21 ("G-21").  *Id.*

Although Pitts agreed putting food in her face could be viewed as an aggressive, or self-harming, behavior, she indicated the reason she did it was because she was hurting.  (ECF No. 26-7 at 21).  She believes her behavior might have caused others to be concerned about her hurting herself.  *Id.* at 44-45.  Pitts was also informed that her behavior was scaring the other inmates.  *Id.* at 47.

After Pitts was moved, a second incident report was written at 9:50 p.m. about her behavior in G-21.  Specifically, it was reported that Pitts "was sitting up in her bunk and striking herself in the face with a closed fist repeatedly."  (ECF No. 26-5 at 5).[4]  When officers entered the cell,

---

[3] The medication records do not contain any entry for the medication risperidone on May 10.  (ECF No. 26-4 at 16).
[4] Pitts does not believe she used a closed fist to hit herself.  (ECF No. 26-7 at 48).

Pitts "was reluctant to answer any questions and became verbally aggressive towards the other detainees in the cell." *Id.* Pitts was pulled out of the cell and placed in the day-room until appropriate housing could be located. *Id.* Pitts was "talking to herself and screaming at the walls." *Id.* At 10:59 p.m., Pitts and her belongings were moved to isolation cell 3 ("ISO-3). *Id.*

Pitts recalls going into a "manic state or something" when she was in G-21 because she was off her meds, had been unable to sleep, and was drinking coffee. (ECF No. 26-7 at 46). She recalls the other detainees in G-Block wanted her to get help so they notified the officers. *Id.* While Pitts admits she hit herself in the face while in her cell, Pitts denies she acted out while in the day-room. *Id.* at 48, 50. She indicates she was surprised to be taken to ISO-3. *Id.* at 50. She contends she was "pretty calm" when she was moved to ISO-3. *Id.* at 64-65. Pitts conceded that "[m]anic behaviors are sort of erratic behavior" and it was "better to be safe in a situation like that." *Id.* at 52. While she was in ISO-3, Pitts recalls writing on the walls in ketchup "kill yourself—meaning, myself." *Id.* at 67. Given this behavior, Pitts agreed it would be reasonable for the jailers to believe she was at risk of suicide. *Id.* at 69.

Pitts felt she should have simply been placed in a cell by herself or left in the day-room rather than being placed in ISO-3. (ECF No. 26-7 at 52-54). She did not believe that detainees with mental disorders should be "disciplined for what they're going through." *Id.* at 53.[5] Pitts does not believe that isolation cells like ISO-3 should exist. *Id.* at 53. If ISO-3 and cells like it exist, Pitts believes the detainees should be observed by nurses not jailers. (ECF No. 26-7 at 27).

Pitts testified ISO-3 was horrifying and inhumane. (ECF No. 26-7 at 21). She described the cell as a room with a brick or cement slab long enough to put a bed on it. *Id.* at 22. There

---

[5] Pitts conceded the WCDC has a disciplinary policy that is followed. (ECF No. 26-7 at 53). She further testified she had never been disciplined while at the WCDC. *Id.*

was a circular hole or drain in the middle of the floor, with a grill on the top, where you went to the restroom—no sink or toilet. *Id.* at 22-23. The "hole" could be flushed from outside the cell. *Id.* at 23. The cell had cameras, a ceiling observation window, and no intercom button. *Id.* at 22-23. Pitts was fed her three daily meals while confined to the cell. *Id.* at 24-25. Pitts saw officers when they provided her with meals, took back the food trays, periodically when they looked into the cell to check on her, and when they flushed the "hole." *Id.* at 25. On one occasion, the cell was swept and mopped. *Id.* One night, Pitts testified they did not let her even have toilet paper. *Id.* at 55-56.

Pitts also testified there was feces on the wall or the corner of the door. (ECF No. 26-7 at 58-59). When the officer came in to clean the cell, Pitts did not think to tell the officer about the feces because she was in her "own world" and her "own spaced out head." *Id.* at 59.

Pitts was allowed to keep her regular jail uniform. (ECF No. 26-7 at 23). Pitts was allowed an hour out of the cell each day. *Id.* During her hour out, she had access to a day-room which contained a toilet, sink, shower, and an electronic kiosk to submit requests and grievances. *Id.* at 24. On either her second or third day in ISO-3, a nurse came "just outside the door" and they had a brief conversation about "the importance of getting stabilized back on [her] medicine." *Id.* at 26. While Pitts denied being suicidal while she was in ISO-3, she testified the major emotion that came over her "felt" suicidal. *Id.* at 21. She contends being in ISO-3 was a "form of torture." *Id.* at 63-64. She testified ISO-3 adversely affected her mind—a type of "mind breakage" she went through. *Id.* She suffered no physical injuries. *Id.* at 64. Pitts felt like she was "left for dead" and indicated the jailers "showed no compassion." *Id.* Pitts conceded that her high state of anxiety and stress did not help her perception. *Id.* at 65.

5

According to Corporal Mulvaney, the "isolation cells may be used to observe and protect detainees who may be suicidal." (ECF No. 26-1 at 4).[6] For this reason, the isolation cells "do not have fixtures such as toilets, sinks, or metal furnishings." *Id.* Corporal Mulvaney further states that "[i]f a detainee is in the isolation cell for observation, but not on suicide watch, they are instructed to wa[]ve at the camera and let officers know they need to use the restroom." As quickly as possible, officers will let the "detainee use a restroom." *Id.* Other than Corporal Mulvaney's generalized statement, there is no indication in the summary judgment record that Pitts was informed of this by medical staff or jail staff. Pitts certainly gave no indication in her deposition testimony that she was given this opportunity.

On November 9, 2021, Pitts was seen by SW Bryant. (ECF No. 26-4 at 1). SW Bryant noted:

> Detainee appeared to be incoherent today, due to her yelling and psychotic behaviors. She's currently on risper[i]done 2 mg., said she was doing ok on it. Records report that she takes it sometimes, refuses at other times. SW will continue to follow-up with her. No current si or hi.[7] *Id*.

That same day, Pitts was moved out of ISO-3. She was taken back to segregation for about two weeks until she was stabilized on her medication. (ECF No. 26-7 at 60). Pitts was then moved back to general population. *Id.*

With respect to Sheriff Helder, Pitts testified that she is not sure "that it's Helder himself," but she was told she could not sue the jail because it was a building. (ECF No. 26-7 at 55). She does not believe rooms like ISO-3 should exist and that needs to be changed. *Id.* Pitts testified that it is a "horrifically sad thing" having people use the bathroom in the middle of the floor and

---

[6] Corporal Mulvaney's original affidavit was not signed. (ECF No. 26-1). A signed affidavit has now been filed. (ECF No. 34).
[7] Suicidal or homicidal ideation.

6

having to eat meals in the cell—all without having the ability to wash their hands. *Id.* at 55-56. Further, Pitts questioned why people in IS0-3 where on lock down for 23 hours a day. *Id.* at 56. Pitts believes ISO-3 should have either a toilet or a person stationed nearby for when the occupant "needed to go." *Id.* at 57-58.

When asked what policy, custom, or practice she contended violated her constitutional rights, Pitts responded that there was a poster on integrity, morals, values, and how to act towards others. (ECF No. 26-7 at 60-61). Pitts testified the poster dealt with integrity. *Id.* at 61. She does not believe that having ISO-3 is in compliance with the contents of this poster. *Id.*

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion

is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Sheriff Helder has moved for summary judgment on the following grounds: (1) the conditions of confinement in ISO-3 did not rise to the level of a constitutional violation; (2) as Pitts suffered no physical injury, she is limited to recovering nominal damages; and (3), there is no basis for official capacity liability.

### A. Conditions of Confinement

Pretrial detainees may not be punished "without running afoul of the [Due Process Clause of the] Fourteenth Amendment. . . . Regarding pretrial detainees, this prohibition encompasses conditions of confinement." *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979) and *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 908-09 (8th Cir. 2020)). In *Bell*, the Court stated that "the proper inquiry is whether [the] conditions amount to punishment of the detainee." *Id*., 441 U.S. at 535.

The Eighth Circuit Court of Appeals in *Stearns* stated:

> In *Bell v. Wolfish*, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. *Id*. at 538. Alternatively, if there is no expressly

>> demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id*. at 538-39. If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. at 539.

*Stearns*, 957 F.3d at 907 (alterations in original) (citations to the Supreme Court Reporter omitted).

In sum, the Constitution prohibits conditions that are (1) intentionally punitive, (2) are not reasonably related to a legitimate governmental purpose, or (3) are excessive in relation to that purpose. *Id.* The Court must determine, in the light most favorable to Pitts, whether her conditions of confinement amounted to punishment. *Id.* at 908-09.

Here, Pitts' claim is premised solely on her confinement to ISO-3 from November 6 - 9, 2021. Pitts has serious mental health conditions. She was not taking her medication on a regular basis. She engaged in erratic behavior, including striking herself in the face multiple times, which she admits could reasonably be construed as displaying an intent to harm herself. Pitts admits her behavior concerned her cell-mates in G-21. Clearly, the decision to move her to isolation, ISO-3, was reasonably related to the legitimate governmental purpose of protecting inmates from either harming themselves, other inmates, or WCDC staff.

In reviewing the conditions in ISO-3, the Court's focus is on the totality of the circumstances and "not any particular condition in isolation." *Stearns*, 957 F.3d at 909. The Court must avoid focusing narrowly on the determination of whether the Pitts was deprived of a single human need. *Id.* Here, there is no evidence of an express intent to punish Pitts. As was made clear in *Bell*, the Due Process Clause is only implicated when a detainee is forced "to endure genuine privations and hardship over an extended period of time." *Bell*, 441 U.S. at 542.

9

All periods of incarceration bring about significant restrictions and changes in living conditions not endured by a non-incarcerated individual. While the conditions in ISO-3, as described by Pitts, were unpleasant, undesirable, and harsh, the conditions were not arbitrary or excessive when compared to the jail officials' goal of safely housing an inmate demonstrating self-harming behavior. Further, the length of her confinement under these conditions was short. Even when in ISO-3, Pitts was given an hour out to shower, exercise, and use the kiosk. Once Pitts discussed her medication needs with the nurse and talked with SW Bryant, who deemed her not to be suicidal or homicidal, Pitts was placed back in segregation. Two weeks later, when stabilized on her medication, Pitts was released back to general population. There is no genuine issue of material fact as to whether Pitts was subjected to unconstitutional conditions of confinement during the three-day period she spent in ISO-3.

### B.  Limitation on Damages

Even if Pitts had stated a claim of constitutional dimension, she would be limited to the recovery of nominal and possibly punitive damages. "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.§ 1997e(e). *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (The physical injury requirement of the PLRA "limits recovery for mental or emotional injury in all federal actions brought by prisoners" but does not bar the recovery of nominal and punitive damages). As Pitts suffered no physical injury, she could not recover compensatory damages.

### C.  Official Capacity Liability

Even if the Court had found a genuine issue of material fact existed as to whether Pitts was

10

subjected to punitive conditions of confinement, Pitts would still have to establish Washington County's liability. Other than in name, an official capacity claim against a governmental employee is considered a claim against the employer, here Washington County. *Crawford v. Van Buren Cnty.*, 678 F.3d 666, 669 (8th Cir. 2012). In *Monell*, the Supreme Court held that "a [governmental entity] cannot be held liable solely because it employs a tortfeasor—or, in other words, a [governmental entity] cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Washington County may be sued under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694.

Pitts does not contend that any policy, custom, or widespread practice resulted in the violation of her federal constitutional rights. Instead, she argues the conditions in ISO-3 are not in compliance with an integrity, morals, and goal orientated poster mounted in the WCDC. This is insufficient to establish official capacity liability against Washington County.

## IV.   CONCLUSION

For the reasons discussed above, the undersigned recommends that Sheriff Helder's Motion for Summary Judgment (ECF No. 24) be **GRANTED**, and that this case be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by**

**the district court.**

DATED this 31st day of January 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

12